**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:19-cv-00106-FDW**

| | | |
|---|---|---|
| **HUGH LOCKLEAR, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | **ORDER** |
| | ) | |
| **N.C. DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ______________________________ | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint. [Doc. 1].

## I. BACKGROUND

Pro Se Plaintiff Hugh Locklear, Sr. ("Plaintiff") is a North Carolina state inmate currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. On August 13, 2019, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 naming the North Carolina Department of Public Safety (NCDPS) and Erik A. Hooks, identified as the Secretary of the NCDPS, as Defendants. [Doc. 1]. Plaintiff claims that Defendants are infringing on his rights under the First Amendment to religious freedoms. [Id. at 3].

Specifically, Plaintiff alleges that on August 6, 2019, Defendant Erik Hooks ("Defendant Hooks") instituted new prison regulations that prevent Plaintiff from practicing certain elements of his Native American religion. According to Plaintiff, these include (1) denying access to tobacco, one of the four "Sacred Herbs" that are smoked in the Native American faith to send prayers to the Creator; (2) allowing inmates to wear only two of the six Sacred Colors, which are traditionally worn as headbands to show respect for the "Sacred Spirits;" and (3) violating previous

"court orders and mandates" which "granted three (3) outside services per week in order to use our Sacred Herbs and send our prayers to the Creator."[1] [Doc. 1 at 4-5]. Plaintiff does not allege what the new policy is with respect to these outside services. [See id. at 5].

As for the Sacred Herbs, Plaintiff also alleges:

> We have been informed that we will [be] switching to a "kinnikinnick" blend however because we have no vendor to sell us this blend we have none and will continue to have none for the foreseeable future until a vendor is found, thus further denying we Native Americans our religious freedoms.

[Doc. 1 at 4].

For relief, Plaintiff seeks a preliminary injunction "to stop the implementation or enforcement of the above-cited August 6, 2019 regulations." [Doc. 1 at 4]. Plaintiff also seeks declaratory relief requiring the NCDPS to allow the use of the Sacred Herb of tobacco and all six of the Sacred Colors. [Doc. 1 at 4].

## II. STANDARD OF REVIEW

The Court must review Plaintiff's Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

---

[1] Plaintiff concedes that, at the time he filed his Complaint, he had not exhausted his administrative remedies and filed "this lawsuit seeking a preliminary injunction while [his] grievance passes those [three] stages." [Doc. 1 at 2]. As such, it appears Plaintiff's Complaint is likely subject to dismissal on these grounds.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Defendant NCDPS

As for Defendant NCDPS, neither the State of North Carolina nor its agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, NCDPS is not a proper defendant in this matter and will be dismissed.

### B. First Amendment

The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate

penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Here, Plaintiff contends that Defendants are infringing on his rights under the First Amendment to religious freedoms, particularly by instituting new regulations regarding the composition of "Sacred Herbs" and the colors of headbands Plaintiff, as a prisoner practicing Native American religion, may employ in the practice of his faith. Plaintiff also alleges that new prison policy has limited access to outside services. Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's Complaint is not clearly frivolous.

**C. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay

particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009).

Reviewing Plaintiff's Complaint based on the above factors, Plaintiff is not entitled to a preliminary injunction. Plaintiff's allegations are barely sufficient to survive initial review. Plaintiff has not demonstrated any of the elements necessary for the Court to employ the extraordinary remedy of preliminary injunctive relief. Plaintiff's request is, therefore, denied.

In sum, NCDPS will be dismissed. Plaintiff's First Amendment claim survives initial review and Plaintiff's request for a preliminary injunction is denied.

**IV. CONCLUSION**

For the reasons stated herein, Plaintiff's First Amendment claim is not clearly frivolous and therefore survives initial review.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's action survives initial review under 28 U.S.C. § 1915(e) as to Plaintiff's First Amendment claim against Defendant Erik A. Hooks only. Defendant North Carolina Department of Public Safety is dismissed as a Defendant in this matter.
2. Plaintiff's request for a preliminary injunction is **DENIED**.
3. Local Rule 4.3 sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall

commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendant Erik A. Hooks, who is alleged to be current or former employee of NCDPS.

Signed: February 3, 2020

Frank D. Whitney
Chief United States District Judge